**Eugene C. MATSON, Plaintiff,**

v.

**CARGILL, INC., Defendant.**

**Civ. No. 4–84–516.**

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 17, 1985.

Michael H. Hennen, Minneapolis, Minn., for plaintiff.

Roy A. Ginsburg, Dorsey & Whitney, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Eugene C. Matson brought this action against Cargill, Inc., alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, breach of contract, and breach of an implied covenant of good faith and fair dealing. Plaintiff seeks compensatory and punitive damages, as well as reinstatement. Jurisdiction is alleged under 29 U.S.C. § 626(b) and 28 U.S.C. §§ 1331 and 1337. The matter is now before the court upon defendant's motions for summary judgment on claims 1 and 2 of plaintiff's complaint and to dismiss claim 3.

*Background*

The relevant facts are essentially undisputed. Plaintiff began working for Cargill on May 1, 1951 at the age of seventeen. He worked for Cargill until May 16, 1983, when he was discharged at the age of 49.

During this time, plaintiff worked in several positions. From 1972 through his termination, he worked on the corporate staff of Cargill's Commodity Marketing Division (CMD). His primary responsibilities concerned purchasing materials, equipment, and parts for CMD's Project Engineers and Plant Superintendents. In 1975, plaintiff was promoted to the position of Senior Purchasing Agent, but his basic responsibilities did not change. Matson depo. at 67.

While working with Cargill, plaintiff received a document entitled "Your Guide to Cargill, A Handbook for Salaried Employees" (the Handbook) and another entitled "Cargill's Supervisor's Manual" (Supervisor's Manual). Each of these documents contains provisions relating to termination and plaintiff claims that these provisions became part of his employment contract.

In the early 1980s, the business activity of CMD's Plant Operations Department dropped precipitously. From a high of 120 million dollars in construction spending in 1981, Cargill expended only about 30 million dollars in the 1982 crop year and only about 18 million in the 1983 crop year. See Aff. Joseph P. Botos.

Because of this sudden decline in the work performed by CMD Plant Operations, the individuals in charge of the division began considering the possibility of reducing the staff. Cargill states that Robert Hubbard, CMD Vice President and Manager of Plant Operations, Joe Botos, Assistant Manager of Plant Operations and the individual who succeeded Hubbard in 1984, and Donald Biorn, Manager of Engineering, all concluded in late 1982 or early 1983 that a reduction in force (RIF) was necessary.

Plaintiff asserts that he spoke with Hubbard in October 1982 who assured him that he would always have a job at Cargill.

Hubbard apparently told plaintiff that he was subject to a transfer to a Cargill terminal because of his experience. Matson aff. at ¶ 10.

The preliminary task of evaluating the department's employees and making a recommendation for a staff reduction was assigned to Biorn. Biorn states that he obtained a memorandum from the Human Resources Department regarding the way a RIF should be handled, reviewed it, and then requested two of his Project Coordinators, Doug Jensen and Allan Johnson, to assist him in rating each of the CMD employees with whom they worked.

Biorn, Jensen, and Johnson prepared a matrix by which to evaluate each employee. The criteria included:

> 1) seniority; 2) ability; 3) quality of work; 4) quantity of work; 5) absenteeism; 6) tardiness; 7) performance appraisal; 8) attitude; 9) stretch; 10) promotability; 11) education; 12) experience; 13) job skill; and 14) know how.

Each of the criteria was weighed to reflect its importance. Using these criteria, Biorn, Jensen, and Johnson independently evaluated each employee potentially affected by the lay-off. Then, they met and reviewed the assessments. Where they differed as to ratings, they discussed the differences and arrived at a compromise rating.

These tentative appraisals were submitted to Hubbard, who, along with other managerial employees modified the recommendations slightly. Cargill's Human Resources Department then assessed the grid, focusing upon the criteria selected and the weight attached to each criteria. It recommended that the categories of "tardiness", "performance appraisal," and "education" be deleted and that the one entitled "seniority" be changed to "length of service." [1] The employee rankings were recalculated accordingly. Cargill asserts that its Human Resources Department discussed the revised grid with its Law De-

partment to ensure that it had complied with all federal and state laws.

A final matrix was then prepared and submitted to the department and division heads for approval. Hubbard subsequently announced the reduction in force on May 16, 1983 to the nine affected CMD employees which included plaintiff. Six of the discharged nine were under the age of 40. Similarly, of the eleven individuals who were assessed and retained, five were 50 or over.

When plaintiff was terminated he was provided with 52 weeks of severance pay, 19 more than the severance compensation to which he was entitled. Cargill also arranged and paid for outplacement services for plaintiff with Clyde Meredith & Company. Plaintiff has submitted a document showing that his purchasing duties were temporarily assigned to younger employees after he was discharged. *See* Ex. D to plaintiff's memorandum in opposition to defendant's motions for summary judgment and to dismiss.

*Discussion*

In passing upon a motion for summary judgment, the court is required to view the facts in a light most favorable to the non-moving party, and the movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983); *Ralph's Distributing Co. v. AMF, Inc.*, 667 F.2d 670 (8th Cir.1981). The non-moving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir.1980). The nonmoving party may not merely rest upon allegations or denials of the party's pleadings, however, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir.1981).

---

**1.** Cargill asserts that the plaintiff benefited by these deletions since he rated poorly in these categories.

## A.  Age Discrimination Claim

These general principles apply to age discrimination claims as well.  To resist a motion for summary judgment, a plaintiff must establish a prima facie case of age discrimination.  *See, e.g., Kephart v. Institute of Gas Technology,* 630 F.2d 1217 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *Stock v. Horsman Dolls, Inc.,* 27 FEP Cases 1423 (D.S.C.1981).  To do this, the plaintiff cannot simply show that he is a member of a protected group and was the victim of an adverse employment decision.  He must show that there is some causal connection between his age and the adverse employment action about which he complains.

Because direct evidence of discrimination is rarely found, a prima facie case can be established by evidence from which the causal connection can be inferred.  The most common formula for doing this is to meet the criteria set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as adapted to ADEA cases.  *See Halsell v. Kimberly-Clark Corp.,* 683 F.2d 285 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).  The plaintiff must show:  (1) that he is within the protected age category under the statute, (2) that he was performing his job at expected levels of performance, (3) that he was discharged, and (4) that the employer sought a replacement to do the same kind of work, thus demonstrating a continued need for the same services and skills.[2]

If the prima facie case is made, the burden shifts to the employer to articulate a valid reason other than age for firing the plaintiff.  If the employer does this, the burden shifts back to the plaintiff to demonstrate that the reasons advanced by the employer are pretextual.  *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■  Establishment of a *prima facie* case, however, does not necessarily mean that the case must be submitted to the jury or that summary judgment is improper.  *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230, 241 at n. 12 (4th Cir.1982).  As stated by the Eleventh Circuit in *Pace v. Southern Railway System:*

> A plaintiff when faced with a motion for summary judgment cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to ... respond sufficiently to any rebuttal by the defendant to create a general issue of material fact.  Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, non-discriminatory reasons for the discharge, a genuine issue of material fact is not automatically presented.

701 F.2d 1383, 1391 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).  If the plaintiff cannot produce sufficient evidence to create an inference of discriminatory motive, then the employer's articulated business reasons remain unrebutted, and summary judgment

---

**2.**  Cargill suggests that the court follow the approach taken by the Fourth and Fifth Circuits in age discrimination cases involving a reduction in force.  The Fifth Circuit in *Williams v. General Motors Corp.,* 656 F.2d 120 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982), replaced the fourth part of the *McDonnell Douglas* test by the following two-prong test:

  a) Plaintiff must show that he was qualified to assume another position at the time of discharge or demotion; and (b) plaintiff must produce evidence, circumstantial or direct from which a factfinder might reasonably conclude that the employer intended to dis-

criminate in reaching the decision at issue.  656 F.2d at 129.

Similarly, the Fourth Circuit in *EEOC v. Western Electric Co., Inc.,* 713 F.2d 1011 (4th Cir. 1983) found that an age discrimination plaintiff must produce some evidence to show that the defendant did not treat age neutrally in its demotion selection.

The Eighth Circuit has recently stated that to establish a prima facie case, a plaintiff in a reduction-in-force situation must come forward with additional evidence to show that age was a factor in the employee's termination.  *Holley v. Sanyo Manufacturing, Inc.,* 771 F.2d 1161, 1165, 1166 (8th Cir.1985).

is appropriate. *Steckl v. Motorola, Inc.,* 703 F.2d 392 (9th Cir.1983).

■■■ Even viewing the facts in a light most favorable to Matson, the court finds that plaintiff has not established a prima facie case. To be sure, plaintiff has shown that he was in the protected group, was adversely affected by an employment decision and was qualified. He has also produced a document which suggests that Cargill temporarily assigned parts of his purchasing duties to employees who were younger than plaintiff.[3] A prima facie case may only be established, however, when there is a basis for inferring that discrimination is the reason for the employment decision. The court is aware of no federal case which holds that a prima facie case is established simply because the plaintiff was replaced by a younger person. *See Holley v. Sanyo Manufacturing, Inc.,* 771 F.2d 1161, 1167 (8th Cir.1985); *Pace v. Southern Ry. System,* 701 F.2d 1383 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). In cases like *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109 (4th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981), *Douglas v. Anderson,* 656 F.2d 528 (9th Cir. 1981), or *Moore v. Sears, Roebuck & Co.,* 464 F.Supp. 357 (N.D.Ga.1979), there was other evidence of discrimination based on age, in addition to a younger replacement. In none of these cases was the fact that the replacement was younger than the plaintiff enough to give rise to an inference of discrimination.

Plaintiff further tries to establish the necessary causal connection between his age and his termination by referring to the contents of two confidential memoranda. The first was written well over a year before the RIF took place and was sent from Hubbard to Bill Boyt of Cargill's Human Resources Department. The memo notes that the support groups to the CMD Engineering Department—estimating purchasing and contract management—are affected by the decrease in the number of construction projects. It discusses several employees in those departments, including plaintiff.[4]

The second memorandum is dated January 27, 1983 and is from Botos to Dan Huber. This memorandum discusses the function of Cargill's Central Purchasing and plaintiff himself, and refers to plaintiff's age in one sentence.[5]

Taken as a whole, these memoranda do not support a prima facie case of age discrimination. The memo from Hubbard to

---

3. Matson stated in an affidavit that a part of his duties were assigned to Allan Johnson, age 31 at the time of Matson's termination, Sharon Emsminger, age 34, and Diane Hopkins, age 36.

4. The December 23, 1981 memorandum provides in pertinent part:

   A more serious situation is the support groups: estimating, purchasing and contract management. There are two young women in these departments that would make very valuable supervisors in any of the local office departments. The purchasing agent [plaintiff] is only an average performer as he spends too much time and conversation on the type of purchasing and expediting that we require. Purchasing is way off, and with no new projects, we must combine this with some other job by March. My only recommendation here is that he be considered for any sales openings, especially technical sales. As you have openings and need additional information, please give me a call.

5. The part which pertains to plaintiff provides in full:

   Enclosed is a memo from Gene Matson, currently employed in CMD Plant Operations as a Senior Purchasing Agent. During the past several years his job developed due to the CMD construction program and a need to coordinate conveyor and leg belt purchasing. As you might suspect, there is no longer a need in CMD for a full-time person in this capacity. However, with proper communication our needs in the area could be filled by a Central Purchasing coordinator. Other divisions or departments could have the same circumstance.

   Gene is 49 years old and has 32 years service with Cargill in the Grain Lab and CMD Operations. He is very dedicated and thorough and enjoys the job of matching equipment specifications to plant applications. His skills do not necessarily lend themselves to a field position in Plant Operations.

   We need to have some idea of what Cargill's intention is in Central Purchasing to assist us in identifying all potential employment possibilities for Gene Matson.

Boyt was written well before the force reduction went into effect, and there is no evidence that the individuals who primarily conducted the RIF ever saw it. Furthermore, the memo did not give the plaintiff's age and it recommended that Matson be considered for any other sales openings. Far from showing evidence of discrimination against Matson sufficient to make a prima facie case, the memo is some proof that he was treated fairly by Cargill.

Similarly, the January 27, 1983 memo from Botos to Huber cannot be said to have unnecessarily alerted the recipient of Matson's age. Rather, the purpose of the memo was to commend his work and explore other job possibilities for him.

Because the temporary replacement of plaintiff by younger persons is insufficient, standing alone, to give rise to an inference of discrimination, and because plaintiff can show no statistical or other evidence of discrimination, the court concludes that plaintiff has failed to establish a prima facie case of age discrimination. Summary judgment is therefore appropriate on plaintiff's age discrimination claims. *See, e.g., Pace v. Southern Ry. System,* 701 F.2d 1383 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983), *Kephart v. Institute of Gas Technology,* 630 F.2d 1217 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). *See also, Holley v. Sanyo Manufacturing, Inc.,* 771 F.2d 1161 (8th Cir. 1985).

■ Even assuming *arguendo* that plaintiff's evidence established a prima facie case, Cargill has persuasively demonstrated that its actions were taken for legitimate, nondiscriminatory reasons. The record shows that Cargill believed a reduction in staff was necessary because of a precipitous drop in its construction and engineering business. Using eleven legitimate non-discriminatory criteria, it systematically evaluated the CMD employees who were potentially affected by the decline, ranked them accordingly and terminated nine employees.

Once Cargill has articulated business reasons, plaintiff is not required to *prove* that these reasons are pretextual at this stage in the proceedings. He is, however, required to present sufficient rebuttal to create a genuine issue of fact. *See, e.g., Pace v. Southern Railway System,* 701 F.2d 1383, 1391 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).

Even viewing the record in a light most favorable to plaintiff, the court finds that he is unable to respond to Cargill's evidence or to demonstrate sufficient evidence to create an inference of discriminatory motive. The discovery deadline in this case was April 1, 1985, but the only evidence plaintiff points to showing age discrimination is his temporary replacement by younger persons and the two confidential memoranda. For the reasons discussed above, if this case were to go to trial on this evidence alone, the court would be compelled to enter a directed verdict.[6] In light of the discovery already conducted, the court concludes that it is highly doubtful that additional evidence would be developed at trial which would change the present posture of the case.

The record currently before the court indicates that there is substantial evidence that Cargill's articulated justification is not pretextual. Plaintiff admitted at his deposition that he knew of no facts which suggested that age was considered in the evaluation process or that he was treated differently because of age when the staff was cut. Matson depo. at 124–125. He also stated in his deposition that he was not aware of any other Cargill employee who had been discriminated against, that he had never experienced any age discrimination there, and that none of the individuals involved in the RIF ever said anything, wrote

---

**6.** Where the evidence is overwhelming that dismissal was not based on age discrimination, a directed verdict is proper. *See, e.g., Holley v. Sanyo Manufacturing, Inc.,* 771 F.2d 1161 (8th Cir.1985); *Gairola v. Commonwealth of Va., Dep. of General Services,* 753 F.2d 1281 (4th Cir.1985); *see also, Jorgensen v. Modern Woodmen of America,* 761 F.2d 502 (8th Cir.1985).

anything or behaved in a way which led him to think they had a discriminatory attitude toward employees between the ages of 40 and 70. *Id.* at 129, 130, 142–51.

Moreover, the final results of the RIF study and recommendations reflect age neutrality. Of the nine employees discharged, six were under the age of 40. Of the eleven employees who were retained, five were over the age of 40.

Upon the unrefuted record, the court finds that even if a prima facie case was established, plaintiff has failed to rebut Cargill's articulated business reasons or show sufficient evidence from which an inference of discriminatory motive could be properly drawn. Thus, summary judgment is appropriate on the age discrimination claims.

### B. Contract Claims

■ Plaintiff claims that the termination provisions in the Handbook and Supervisor's Manual given to him by Cargill became part of his contract with Cargill. He contends that Cargill breached these provisions. Cargill, by contrast, argues that neither provide specific procedural guarantees, and thus may not be considered contracts. Moreover, it states that even if the manuals are found to be a contract, the undisputed facts show that the contract was not breached.

Under Minnesota law, the existence of a contract, as well as the terms and construction of that contract are generally questions of fact to be determined by the factfinder. *Bergstedt, Wahlberg, Berquist Assoc., Inc. v. Rothchild,* 302 Minn. 476, 480, 225 N.W.2d 261, 263 (1975). It is established in Minnesota that a manual such as those distributed by Cargill may contractually modify an at-will employment agreement. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626 (Minn.1983). To be construed as a contract, however, the provisions of the manual must be an offer definite in form and they must be communicated to the offeree. An employee's general statements of policy do not meet the contractual requirements for an offer. *Id.* at 626. *See Degen v. Investors Diversified*

*Services, Inc.,* 260 Minn. 424, 110 N.W.2d 863 (1961). When language in an employment manual is definite, a legitimate question for the fact-finder is raised as to the terms of the contract. *Hunt v. IBM Mid America Emp. Fed. Cred. Union,* 358 N.W.2d 461 (Minn.App.1984). An employees' retention of employment after the offer is communicated accepts the offer of a unilateral contract. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983).

In the instant case, the section of the handbook dealing with "company-initiated ... involuntary terminations not for serious cause" provides:

Terminations of this type usually result from a condition or circumstances over which the employee has no control, such as reductions in staff, the closing of a department, or inability to perform the job.

Every effort is made to avoid such terminations. Where changes in the requirements of the work become necessary, a displaced employee will be transferred to another job whenever it is possible. When a termination is unavoidable, the employee will be given reasonable notice or severance pay related to length of service, plus any accrued vacation.

The language in the last paragraph is sufficiently definite and mandatory to raise an issue for the finder of fact as to whether the language in the handbook is an offer which was accepted by plaintiff's continued employment.

Cargill argues that even if these provisions are considered part of plaintiff's contract, the court should find as a matter of law that it complied with the requirements. Plaintiff concedes that Cargill complied with the requirement of termination with notice or severance pay, but contends that it did not adhere to the provisions regarding efforts to avoid termination or transfer. He notes that Cargill itself supplied to its supervisors a document detailing the efforts it expected to be taken prior to terminations, including, among other things, a

hiring freeze, a cost-reduction program and shorter work weeks. *See* plaintiff's ex. H. Plaintiff cites the deposition of Biorn, who headed the group deciding which employees to terminate, to show that he did not discuss these measures with regard to plaintiff and that little effort was made to transfer plaintiff.

Construing the evidence in a light most favorable to plaintiff, as the court is required to do, the court finds that genuine issues of material fact remain as to whether Cargill complied with this language in the handbook. Summary judgment is inappropriate, therefore, on this part of plaintiff's claim.

■ The court does find as a matter of law, however, that plaintiff cannot base a breach of contract claim on the language in the Supervisor's Manual. Even assuming *arguendo* that plaintiff properly possessed the Supervisor's Manual and that all the terms inside were communicated to him,[7] many of the statements within are no more than general statements of policy.[8] This is particularly true of those statements which refer to "fair treatment" of the employees.

In particular, plaintiff relies on four provisions of the Supervisor's Manual to create a contract. Analysis of the "due notice" provision,[9] the "no surprise" provision,[10] and the "two management employees present" provision [11] shows that these sections are merely guidelines which set forth the general company policy. Similarly, the "transfer possibility" provision [12] provides guidance to supervisory employees who must reduce the staff. To be sure, the portion of this provision which deals with outplacement is mandatory and could be said to form an offer. It is undisputed, however, that Cargill arranged and paid for outplacement service for plaintiff, satisfying the provision as a matter of law. Accordingly, summary judgment on that part of plaintiff's claims which are based on the Supervisor's Manual is appropriate.

7. The court finds it unnecessary to decide the issues at this time, but notes that it is far from evident that the provisions of the Supervisor's Manual could be construed as an offer communicated to the plaintiff.

8. The introduction to the handbook stresses:
Each Cargill location has the responsibility of putting Cargill policies into actual practice. Some policies permit no deviation in individual interpretation; others, however, *are general guidelines to be interpreted in the manner that best suits the needs of the location involved.* Some manual pages include the interpretation of *corporate guidelines* that are followed in the Minnetonka offices. These may assist other locations in adapting *general policies* to meet their location's needs. (Emphasis added). *See* R.A. Ginsberg Aff., Ex. 0.

9. The due notice provision of the Supervisor's Manual states:
Under normal conditions, it is contrary to the *general policy* of the Company to terminate the services of employees without due notice. The standard amount of notice, or severance pay in lieu thereof, ... is outlined in the schedule below. (Emphasis added.)
*See* R.A. Ginsburg Aff., Ex. 0.

10. One "no-surprise" provision is located under the section of the Supervisor's Manual which is entitled "Terminations Resulting from Unsatisfactory Performance" and states:

Being terminated for unsatisfactory performance should never come as a surprise to an employee.
*See* R.A. Ginsburg Aff., Ex. 0. Another is located under "Terminating an Employee" and states "Being fired should not come as a surprise to the employee: timely and regular performance reviews should have been conducted." *Id.*

11. The "two management employees present" provision appears under a section in the Supervisor's Manual entitled "Terminating an Employee". This sentence is one of the "guidelines for a meeting" and it is contingent upon the possibility of future complaint or litigation. It provides:
Two management representatives should be present at the termination interview if there is a possibility of future complaint or litigation.
The next sentence states that these guidelines "are not requirements for a valid termination." *See* R.A. Ginsburg Aff., Ex. 0.

12. The "transfer possibility" provision reads:
If it appears that there is a possibility that an employee (or employees) faces termination due to job elimination or staff reduction, Corporate Employment should be notified immediately in order to identify transfer possibilities within the company. If no suitable transfer can be found, Corporate Employment will provide outplacement services to assist the employee in finding a job outside of Cargill. *See* R.A. Ginsburg Aff., Ex. 0.

Plaintiff also claims that Hubbard's alleged promise to plaintiff that, because of his experience and length of service, there would always be a job for him at Cargill could overcome the presumption that he was terminable at will. Under Minnesota law, however, a promise of "permanent" employment does not change the at-will nature of the hiring. *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983); *Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 266 N.W. 872 (1936). Before an employee's claim of "life-time" employment can be valid, the employee must demonstrate that he gave additional consideration which is uncharacteristic of the employment record itself. *Bussard v. College of St. Thomas*, 294 Minn. 215, 200 N.W.2d 155 (1972). The record is devoid of such consideration in this case. Summary judgment is appropriate on this aspect of plaintiff's contract claim as well.

### C. Contract and Tort Claims

Plaintiff claims that the Handbook and the Supervisor's Manual, along with the alleged promise of Hubbard, create an implied covenant of good faith and fair dealing between the parties. He claims that Cargill breached this covenant by terminating him. Cargill, on the other hand, maintains that this allegation must be dismissed for failure to state a claim.

The court agrees that the plaintiff's claim fails to state a cause of action. Minnesota does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an employment context. *Mason v. Farmers Ins. Cos.*, 281 N.W.2d 344 (Minn.1979); *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775 (1975), *cert. denied*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). Bad faith termination of a contract does not give rise to a cause of action independent of a contract action, except in exceptional cases where the defendant's breach is or is accompanied by an independent tort. *Id.* The employment relationship between Cargill and the plaintiff could be terminated without cause, and the good faith of the termination is not a valid issue under *Mason.*

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. Defendant's motion for summary judgment is granted with respect to the age discrimination claims in Claim One of plaintiff's complaint; that claim of plaintiff's complaint is dismissed. Summary judgment is also granted with respect to the contract claims based on "Cargill's Supervisor's Manual" and the alleged promise of Hubbard of permanent employment in Claim Two of plaintiff's complaint, and those aspects of Claim Two are dismissed. The motion for summary judgment is denied as to plaintiff's contract claims arising out of "Your Guide to Cargill, A Handbook for Salaried Employees" in Claim Two of plaintiff's complaint.

2. Defendant's motion to dismiss Claim Three of plaintiff's complaint is granted, and Claim Three of plaintiff's complaint is dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.