Karen CAPAN, Appellant,

v.

Patrick DAUGHERTY, defendant and third party plaintiff, Respondent,

v.

Ruth HAMMOND, et al., third party defendants, Respondents.

No. CO–86–1940.

Court of Appeals of Minnesota.

March 17, 1987.

Seymour J. Mansfield, Robert A. Johnson, Seymour J. Mansfield & Associates, Minneapolis, for appellant.

Robert J. Alfton, Minneapolis City Atty., Jerome F. Fitzgerald, Asst. City Atty., Minneapolis, for respondent Patrick Daugherty.

John P. Borger, Faegre & Benson, Minneapolis, for respondents Ruth Hammond, et al.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a trial court summary judgment dismissing respondents from appellant's defamation cause of action. Appellant claims the trial court erred in (1) finding the remarks were constitutionally protected statements of opinion and (2) refusing to allow appellant to amend her complaint. We affirm.

## FACTS

Appellant Karen Capan was hired in early 1979 by the City of Minneapolis as a community block club organizer. The block clubs were designed to assist area residents in resolving neighborhood and community problems and more effectively expressing their concerns to government officials.

One area involved residents of Mississippi Courts, a 30–year–old housing development which the city intended to redevelop as middle- to high-rise apartments. Appellant organized four block clubs in Mississippi Courts which became involved in this public controversy, and she assumed a more active role than she had with other block clubs.

Appellant's supervisor, Jules Beck, became dissatisfied with appellant's role as advocate and instructed her to no longer attend Mississippi Court's block clubs. He also told her not to attend a meeting of the Camden Planning District Citizens Advisory Committee on March 1, 1979. Appellant attended the meeting and publicly disagreed with Beck regarding her continued involvement as a Mississippi Courts block club organizer. Beck fired appellant the next day.

Many of the area residents believed Beck was pressured by Minneapolis alderman, respondent Patrick Daugherty, to fire appellant because of her opposition to the Mississippi Courts redevelopment. After her firing, appellant wrote Daugherty a five-page letter chronicling her relationship with him and her belief in his abuse of power. Respondent Ruth Hammond of respondent Minneapolis Star & Tribune began an investigation which resulted in an article published in the Minneapolis Tribune on May 12, 1979 entitled *Karen Capan: Was she Fired for Political Reasons?*

The article described appellant's work in the North Side Minneapolis community, the circumstances of her firing, and the neighborhood's frustrations with respondent Daugherty. Also reproduced were comments regarding appellant made by Daugherty in an interview with Hammond:

> Daugherty denies he played a role in Capan's firing. He discredits all her charges by suggesting that she is not "dealing with a full deck."

> Daugherty advised against reporting about the issue because "I don't like to see anybody get hurt" and he thought Capan's chance of getting another job would be low if the word got out that she'd "belittled" her boss. "It's almost like having a felony and then seeking employment," Daugherty said.

> "I bet you it took her about eight weeks to write it," he said of Capan's five-page letter. "She jumps around in that letter and, at times, it makes me think the girl needs help. It hit the round file real quick, I tell you that."

> "I don't know her intimately or any other way," he said, although he has talked with her a few times. "Maybe the girl is frustrated. Maybe she has mental prob-

lems." Daugherty pointed out that he is a lifelong resident of Minneapolis and is happily married, whereas Capan is neither.

Minneapolis Tribune, May 12, 1979, at 4B, col. 2.

In November 1979, appellant sued respondent Daugherty for defamation, seeking general, special and punitive damages. In January 1981, respondent's summary judgment motion was denied. Daugherty had sought dismissal in part because appellant failed to join Hammond and the Minneapolis Star & Tribune. In April 1981, Daugherty served Hammond and the Minneapolis Star & Tribune with a third party complaint asserting that any injuries suffered by appellant were caused by the newspaper's publication, and not by statements alleged to have been made by Daugherty.

In 1983, appellant changed counsel and in 1984 moved to amend her complaint to add as direct defendants Hammond and the Minneapolis Star & Tribune. Appellant's motion was denied by order filed June 14, 1986.

By judgment entered August 18, 1986, respondents' summary judgment motions were granted. Daugherty's motion was granted because the trial court concluded his statements constituted mere opinion under both the Restatement (Second) of Torts § 566 (1977) and the multi-factor test of *Janklow v. Newsweek, Inc.,* 788 F.2d 1300 (8th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986). The trial court dismissed all claims against Hammond and the Minneapolis Star & Tribune because all claims against Daugherty were dismissed. Appeal is made from the August 18 summary judgment.

## ISSUE

Did the trial court err in concluding the alleged defamatory statements were mere opinion protected under the first amendment?

## ANALYSIS

1. Appellant claims the trial court erred in finding respondent Daugherty's remarks were constitutionally protected statements of opinion. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974) (opinion is absolutely protected under first amendment). She asserts the remarks did not constitute opinion under either the Restatement test or the multifactor test.

█ The Eighth Circuit recently adopted a multi-factor test for determining whether a remark is mere opinion protected by the first amendment. *See Janklow v. Newsweek, Inc.,* 788 F.2d 1300 (8th Cir.) (modifying the four factor test established in *Ollman v. Evans,* 750 F.2d 970 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985)), *cert. denied,* — U.S. —, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986). The court previously had relied on the single factor test of the Restatement (Second) of Torts § 566 (1977). *See Lauderback v. American Broadcasting Companies,* 741 F.2d 193 (8th Cir.1984), *cert. denied,* 469 U.S. 1190, 105 S.Ct. 961, 83 L.Ed.2d 967 (1985).

The *Janklow* factors are:

(a) the precision and specificity of the disputed statement (the more imprecise, the more likely opinion);

(b) the statement's verifiability (the less verifiable, the more likely opinion);

(c) the literary and social context in which the statement was made (including the entire communication's tone, the use of cautionary language, the category of publication, its style of writing and intended audience); and

(d) the statement's public context (consideration of the public or political arena in which the statement was made).

*See Janklow,* 788 F.2d at 1302–03. We apply these factors to the statements involved here.

(a) *Specificity.*

█ Appellant claims there is no ambiguity regarding Daugherty's statements. We agree. To assert someone has mental

problems, is not dealing with a full deck and needs help specifically infers lack of mental competence. While respondent newspaper argues impreciseness because Daugherty was not attempting to clinically diagnose appellant's mental condition, we do not think Daugherty's purpose is relevant to the specificity of his remarks. The nonclinical tone of his comments is a description properly considered when analyzing the literary and social context of the remarks.

■ Regarding Daugherty's statement about publicizing appellant's belittling of her employer, we think the remark specifically made an innocuous analogy to a felon's chance for reemployment. That statement does not imply appellant herself was a felon and her claims in that regard are meritless.

### (b) *Verifiability.*

Daugherty's statements are verifiable because mental competence may be established.

### (c) *Literary and Social Context.*

Appellant cites to several facts she claims indicate Daugherty's comments were defamatory statements. First, Daugherty knew his remarks were made "on the record" and would appear in a news article and failed to use cautionary language. Further, the article did not appear in the opinion-editorial section. Finally, she asserts she is not a public figure as a matter of law and the matter of her termination is a private issue.

In reviewing this factor, the publication must be analyzed in its entirety. Daugherty's statements were not presented in a vacuum. A reader was first alerted to the community's and appellant's criticism of Daugherty before reading Daugherty's remarks. An adversarial tone was clear.

■ Contrary to appellant's interpretation, Daugherty did use cautionary language. The author stated Daugherty *suggested* appellant was not "dealing with a full deck." *"[I]t makes me think* the girl

needs help." *"Maybe* the girl is frustrated." *"Maybe* she has mental problems." These cautionary phrases alert the reader that what is being read is likely opinion. *See Ollman,* 750 F.2d at 983.

■ The fact the article did not appear in the opinion-editorial page, while relevant, is not dispositive here because the article involved news reporting and the author herself did not editorialize.

■ Finally, Daugherty disclosed the limited basis for his assertions. His statements were based in large part on appellant's letter written to him. Daugherty emphasized his limited relationship with appellant, which enhances interpretation of his remarks as opinion.

### (d) *Public Context.*

While appellant argues she is not a public figure, that analysis "has no direct relevance here." *Janklow,* 788 F.2d at 1303.

■ What is relevant is appellant's voluntary positioning of herself in a public debate regarding the Mississippi Courts redevelopment. The article clearly delineated appellant and Daugherty's polarized views on that public issue.

> When we read charges and countercharges about a person in the midst of [political] controversy we read them as hyperbolic, as part of the combat, and not as factual allegations whose truth we may assume.

*Ollman,* 750 F.2d at 1002 (Bork, J., concurring).

■ Our decision whether Daugherty's statements are fact or opinion is based on the totality of the circumstances. No single factor is dispositive. *See Janklow,* 788 F.2d at 1302. In our determination, Daugherty's statements as read in full context were mere opinion. We therefore affirm the trial court's dismissal of all respondents from appellant's cause of action.

2. Given our conclusion Daugherty's statements were opinion, we need not reach appellant's arguments regarding amendment of her complaint.

## DECISION

The trial court properly granted respondents summary judgment.

Affirmed.