**Judy GERNANDER, Appellant,**

v.

**WINONA STATE UNIVERSITY, et al., Respondents.**

**No. C5–88–500.**

Court of Appeals of Minnesota.

Aug. 30, 1988.

Laura J. Seaton, Kellum & Seaton, Judy A. Gernander, Winona, for appellant.

Merwin Peterson, St. Paul, for respondents.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant seeks relief from a summary judgment order dismissing her defamation claim. Appellant argues that the trial court erred in finding that statements in respondent Gieske's memorandum were factual under the four-factor test adopted by this court in *Capan v. Daugherty*, 402 N.W.2d 561 (Minn.Ct.App.1987).

## FACTS

Appellant Judy Gernander joined the instructional staff at Winona State University in 1970 and served as an assistant professor in the Department of Business Administration and Economics. Five years later appellant's rank was raised to the position of associate professor and in October 1983 appellant applied for a promotion to the rank of full professor.

The promotion application procedure was governed by an agreement between the State University Board (SUB) and the Inter-Faculty Organization/Minnesota Education Association (IFO/MEA). Pursuant to that agreement, appellant's application was considered and voted upon by the faculty of her department. Fourteen members supported appellant's promotion, nine members opposed promotion and eight abstained.

Respondent Michael Gieske, the chair for the Department of Business Administration and Economics, submitted appellant's application to the dean with a statement supporting appellant's promotion. However, the dean disagreed and on March 19, 1984 he recommended to the Vice–President of Academic Affairs that appellant not be promoted.

Appellant was notified of the dean's decision two days later. On March 22, 1984, appellant sent a memo to respondent Gieske requesting a copy of the University's statement of mission and a statement as to how the University contributed toward faculty efforts to meet their obligations in furtherance of that mission.

Respondent Gieske replied on March 23 by sending appellant a memo which read:

| | |
|---|---|
| Judy Gernander | President Stark |
| Michael Gieske | Dr. DuFresne |
| Your Memo of March 22 | Dean Gorman |
| March 23, 1984 | |

A) You may obtain a statement of the Mission of Winona State University at the President's Office and on page 12 of the current University catalog which you use for student advising.

B) It is not proper for me to interpret and fully define for the President how the University contributes toward faculty members efforts to meet their obligations in furtherance of that mission as I do not represent the President's Office. Therefore, I am forwarding your request to that office.

While this may not be sufficient help; so that I can be of more help in arguing your case for promotion, please furnish me with

  a) the number of students who enrolled in your special offering. What To Do [Un]til (sic) the Lawyer Comes, last Summer (1983) for which Dean Tanner obtained special funding.
  b) your assessment of the value of that offering.
  c) a statement defining the difference between a skit and a play as the word is used in your promotion materials.
  d) the appropriate average hours per week you have spent on campus over the last ten years.
  e) the average number of minutes per 50 minute class period you spent in class over the last several years.

The above information, hopefully, may positively [a]ffect (sic) the interpretation of the materials you selected to present in support of your application for promotion. As I am not searching for negative material, please ignore any particular area which you feel would not reflect positively. Given more time, I might be able to find more areas that could be strengthened but I do want to honor your request for a response in one day (by 3/23/84).

I do wish you success in your continued endeavors along this line in so far as it contributes to the chances of promotion to all of our seven department members who are also applying for promotion.

Also, in view of your March 30, 1984 deadline, could I please have your response by March 27, 1984.

Respondent Gieske sent copies of his memo to appellant, the dean, vice-president and president of the University. Gieske also showed this memo to at least three faculty members. On May 10, 1984, appellant was formally denied promotion to full professor. During the following school year, appellant's second application for promotion was granted.

Appellant commenced this action in September, 1984. Her complaint contains four counts alleging among other things that Gieske's memo contained defamatory statements. In June 1985, respondents brought a motion for partial summary judgment on the appellant's defamation count which was denied by the trial court. Two years later respondents brought a motion for a rehearing on their earlier summary judgment. On October 1, 1987, the trial court granted respondents' motion and dismissed appellant's defamation claim, finding that the statements contained in the memorandum were Gieske's opinions and protected by the First Amendment.

## ISSUE

Did the trial court err in concluding that respondent Gieske's alleged defamatory statements were opinions protected by the First Amendment?

## ANALYSIS

■ If the statements in Gieske's memorandum are considered opinions, not facts, the statements are constitutionally protected. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). In an earlier case, this court adopted the rule that whether a statement is a fact or opinion is an issue for the court to decide. *Erven v. Provost*, 413 N.W.2d 861, 863 (Minn.Ct.App.1987) quoting *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1305 (8th Cir.1986), *cert. denied* — U.S. —, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986). We adopt that rule in the present case also.

The *Janklow* four factor analysis is used in determining whether a statement is an opinion or a fact. The factors are:

  (a) the precision and specificity of the disputed statement (the more imprecise, the more likely the statement is opinion);
  (b) the statement's verifiability (the less verifiable, the more likely opinion);
  (c) the literary and social context in which the statement was made (including the entire communication's tone, the use of cautionary language, the category of publication, its style of writing and intended audience); and
  (d) the statement's public context (consideration of the public or political arena in which the statement was made)

*Capan v. Daugherty*, 402 N.W.2d 561, 563 (Minn.Ct.App.1987) quoting *Janklow* 788 F.2d at 1302–03.

■ Analysis of the allegedly defamatory memorandum under the four factor test shows that the statements were opinions and not facts.

### (a) Precision and Specificity

Throughout the memorandum, Gieske makes statements implying appellant's work was deficient. It expresses no specific facts. An implication is far from a fact.

Appellant argues that two members of the faculty who read the memorandum inferred facts from the memo and used those facts in subsequent negative recommendations for appellant's promotion. However, faculty members judging a candidate's application for promotion would likely consider both facts and opinions of other faculty members. When it is probable a reader would use both statements of fact and opinion, the reader's mere use of a statement does not establish the statement's identity as a fact.

(b) Verifiability

Gieske's memorandum makes five requests for information and by their nature, inquiry statements cannot be verified. The answers to those requests regarding the number of students and time spent on campus might be verifiable through University records. However, the particular information sought would typically be necessary to evaluate a promotion request and the answers to the requests would not be defamatory. The remainder of the statements in the memo simply imply that appellant's materials supporting her application had weaknesses and such implications are not verifiable.

(c) Literary and Social Context

In reviewing this factor, the publication must be analyzed in its entirety. *Capan*, 402 N.W.2d at 564. The audience for this memorandum was limited. The memo was directed to appellant and three officers of the University involved in the promotion process. Also, three faculty members saw the memo. Further, the inquiring style in which the memo was written gave the readers notice that the writer was not reciting facts. Finally, this communication would have been read by university officials together with Gieske's earlier statement supporting appellant's promotion.

Although the tone of the memorandum was sarcastic, its writing style, limited audience, and another contemporaneous communication by Gieske encourages interpreting his statements as opinions.

(d) Public Context

This factor requires an examination of the political arena within which Gieske's memorandum was published. Gieske's memorandum was communicated within an academic promotion process. The decision whether to promote a candidate to the position of full professor involves a process heavily laden with debate. The academic community will not casually grant the privileges accorded the position of full professor at a state university. Through her application for promotion, appellant willingly opened her record of past performance for inspection and was knowingly subject to judgment by her peers and superiors. Communications of those judgments are to be expected and must be freely permitted.

Whether the statements in Gieske's memorandum are opinions or facts depends on the totality of the circumstances. *Capan*, 402 N.W. at 564. Reading Gieske's memorandum as a whole and considering the circumstances in which the memo was published, it is clear that Geiske's statements were opinions.

### DECISION

The trial court properly granted respondent's summary judgment.

Affirmed.