Vincent J. MEYER, Plaintiff,

v.

TENVOORDE MOTOR CO., a Minnesota Corporation, John Tenvoorde and David Tenvoorde, Defendants.

Civ. No. 6–88–0404.

United States District Court, D. Minnesota, Third Division.

June 12, 1989.

992

He was 58 years old when terminated, and was the dealership's new car sales manager. On December 1, 1987, John Tenvoorde, the general manager, told Meyer that he was being terminated because the company needed "new blood." Tenvoorde did not tell Meyer that he was being terminated for performance reasons. Tenvoorde later indicated that Meyer's performance had been substandard.

Meyer contends that he was replaced in response to pressure from Ford Motor Company to make changes at the dealership. Meyer's replacement, Ronald Henne, was hired in January 1988. He was 41 years old. Ford had recommended Henne to the dealership.

Meyer suffered severe stress-related depression following his termination. He began looking for a new job in July 1988. At that time he was forced to tell two prospective employers that he had been terminated for unsatisfactory performance. He began working as a salesperson at Miller Auto Center in St. Cloud on July 11, 1988.

Terence M. Fruth, Fruth & Anthony, P.A., Minneapolis, Minn., for Meyer.

Michael J. Ford, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, Minn., for Tenvoordes.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

The court heard oral argument on the defendants' motion for summary judgment on May 26, 1989. Having considered the record and the submissions of counsel, the court grants summary judgment against Meyer's claims of breach of the covenant of good faith and fair dealing, and of intentional and negligent infliction of emotional distress. The defendants' motion is denied on all other counts.

### FACTS

Vincent Meyer worked for Tenvoorde Motor Company from 1953 until late 1987.

## ANALYSIS

In seeking summary judgment, the Tenvoordes bear the burden of demonstrating "that the record does not disclose a genuine dispute on a material fact." *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273 (8th Cir.1988). If the record bears out the movant's contention, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The judge's function at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, the court views the evidence in the light most favorable to the non-moving party. *Osborn v. E.F. Hutton & Co.*, 853 F.2d 616, 618 (8th Cir. 1988) (citation omitted).

### 1. Age discrimination

The Tenvoordes contend that Meyer was released for performance problems and

point to the improvement in sales since Meyer's departure. They also argue that if Ford pressured the dealership to replace Meyer, Ford's motives for doing so are irrelevant to Meyer's claims against the Tenvoordes.

To resist the motion for summary judgment, Meyer must establish a prima facie case of age discrimination. *Matson v. Cargill, Inc.*, 618 F.Supp. 278, 281 (D.Minn. 1985). Meyer contends that John Tenvoorde's statement that the company needed "new blood" is direct evidence of discrimination. He also contends that he can make out a prima facie case under the format established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To do so, he must prove that he was in a protected class, that he met applicable job qualifications, that he was discharged, and that his employer sought a replacement to do the same work. *Holley v. Sanyo Mfg.*, 771 F.2d 1161, 1165 (8th Cir.1985).

■ The only element in dispute, for purposes of this motion, is Meyer's job performance. Based on his prior commendations and John Tenvoorde's comments to Meyer when he fired Meyer, this element is at least in dispute. Similarly, there remains a factual dispute over whether the defendants' allegations of poor performance were pretextual.

The defendants also submit that sales, profits, and inventory control have improved since Henne took over. Based on evidence presented by Meyer, these improvements appear to be due to the resolution of problems which were not within Meyer's realm of responsibility. Taking this evidence in the light most favorable to Meyer, the improvements provide no basis for evaluating Meyer's performance.

As to the defendant's argument that Ford's motive is irrelevant to the consideration of age discrimination claims against the Tenvoordes, the court is not convinced. Ford's motive is potentially relevant to the key issue of whether age was a determining factor in the decision to release Meyer.

Whether he pursues his claim based on direct evidence or under the outline of *McDonnell Douglas,* Meyer has demonstrated material factual disputes sufficient to withstand summary judgment.

### 2. Implied covenant of good faith and fair dealing

■ The Minnesota Supreme Court has "not read an implied covenant of good faith and fair dealing into employment contracts." *Hunt v. IBM Mid America Employees Fed. Credit Union*, 384 N.W.2d 853, 858 (Minn.1986). The court rejected this theory of recovery on policy grounds, concluding that such a change in employment laws is best left to the legislature. Accordingly, the court holds that Meyer has no claim under Minnesota law for a breach of the covenant of good faith and fair dealing.

### 3. Defamation

Meyer claims that the defendants defamed him by communicating to his former clients and others that he had retired, and by compelling him to communicate to prospective employers that he had been terminated for unsatisfactory performance.

To prove defamation, Meyer must show that the statements at issue were false, were communicated to someone other than the plaintiff, and tended to harm his reputation and to lower him in the estimation of the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980).

■ The defendants contend that by telling others that Meyer had retired, they were merely stating an opinion. *Gernander v. Winona State Univ.*, 428 N.W.2d 473, 475 (Minn.Ct.App.1988) (citing *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1305 (8th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986)). The statement is quite specific and the fact of Meyer's retirement is readily verifiable. Indeed, it is somewhat insincere for Meyer's former employer to suggest that it had no factual knowledge of his retirement. The court finds that this is a statement of fact, and that its alleged defamatory nature is a disputed fact.

As to Meyer's second claim of defamation, that he was compelled to self-publish the reason for his termination, the defendants contend that this statement was conditionally privileged.

The conditional privilege accorded to former employers communicating with prospective employers applies in compelled self-publication cases. *Lewis v. Equitable Life Assurance Society*, 389 N.W.2d 876, 889 (Minn.1986). The statement must be made in good faith and for a legitimate purpose. *Id.* The parties dispute whether the claim of poor performance had any basis in fact. Accepting Meyer's contention that allegations of poor performance were an after-the-fact pretext for his firing, the defendants could not have made the statement in good faith. The court finds, therefore, that the defendants' claim of conditional privilege is a matter in dispute.

### 4. Intentional infliction of emotional distress

Meyer must prove that the conduct at issue was extreme and outrageous, that it was intentional or reckless, that it caused emotional distress, and that the distress was severe. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn. 1983). The conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439 (citation omitted). In addition, the mental distress must be "so severe that no reasonable man could be expected to endure it." *Id.*

Meyer bases this claim on the extraordinary length of his service and devotion to the dealership, on his termination without warning, and on the fact that John Tenvoorde had liquor on his breath when he fired Meyer.

█ Abrupt discharge without warning does not constitute extreme and outrageous conduct. *Corum v. Farm Credit Services*, 628 F.Supp. 707, 719 (D.Minn. 1986) (citing *Eklund v. Vincent Brass and Aluminum Co.*, 351 N.W.2d 371, 379 (Minn.Ct.App.1984), *review denied* (Nov. 1, 1984)). As in *Corum*, the manner in which

Meyer was fired was distasteful, but he has not put forth facts which place his termination beyond the bounds of decency.

Further, the distress alleged by Meyer is not unlike that suffered by many laid-off employees, and therefore not so severe that no reasonable man could be expected to endure it. *Eklund*, 351 N.W.2d at 379.

### 5. Negligent infliction of emotional distress

Minnesota courts recognize a cause of action for negligent infliction of emotional distress for

a person within the zone of danger of physical impact who reasonably fears for his or her own safety and who consequently suffers severe emotional distress with resultant physical injury....

*Stadler v. Cross*, 295 N.W.2d 552, 553 (Minn.1980).

In *Stadler*, the plaintiffs were parents who witnessed the defendant's truck strike their child. The parents were never in any physical danger. The issue before the court was whether bystanders who witness negligently-caused injury to another and who suffer emotional distress with physical manifestations may recover, even though they were never within the zone of danger. *Id.* The court refused to adopt the "relational proximity" doctrine of *Dillon v. Legg*, 68 Cal.2d 728, 740–41, 69 Cal.Rptr. 72, 80, 441 P.2d 912, 920 (1968). The court held, instead, that liability for this tort should not be extended beyond the zone of danger of physical impact. *Stadler*, 295 N.W.2d at 555. *Accord, Langeland v. Farmer's State Bank of Trimont*, 319 N.W.2d 26, 32 (Minn.1982) (no cause of action for negligent infliction of emotional distress absent either physical injury or physical danger to plaintiff).

The Minnesota Court of Appeals, in *Bohdan v. Alltool Mfg. Co.*, 411 N.W.2d 902 (Minn.Ct.App.1987), *review denied* (Nov. 13, 1987), found an exception to the "zone of danger" requirement. Specifically, "a plaintiff may recover damages for mental anguish or suffering for a direct invasion of his rights, such as defamation, malicious

prosecution, or other willful, wanton or malicious conduct." *Id.* at 907 (citing *State Farm Mutual Auto. Ins. Co. v. Village of Isle*, 265 Minn. 360, 122 N.W.2d 36, 41 (1963) and *Kamrath v. Suburban Nat'l Bank*, 363 N.W.2d 108, 111 (Minn.Ct.App. 1985). The court then noted that if the appellant's defamation action stands, then he may continue to assert his claim for negligent infliction of emotional distress. *See also Tibbetts v. Crossroads, Inc.*, 411 N.W.2d 535, 538 (Minn.Ct.App.1987) and *Lee v. Metropolitan Airport Comm'n*, 428 N.W.2d 815, 823–24 (Minn.Ct.App.1988).

■ Meyer's defamation counts remain and he argues, based on *Bohdan*, that his claim for negligent infliction of emotional distress should also survive summary judgment. This court declines to follow *Bohdan*, and dismisses this count because Meyer has failed to allege facts which meet the requirements of *Stadler*.

In the exercise of diversity or, in this case, pendent jurisdiction, federal courts are bound by the decisions of the state's highest court. *Kifer v. Liberty Mutual Ins. Co.*, 777 F.2d 1325, 1329 (8th Cir.1985). When state law is unclear or unsettled, "it is the duty of a federal court to apply the rule it believes the state supreme court would follow." *Gearhart v. Uniden Corp. of America*, 781 F.2d 147, 149 (8th Cir. 1986) (quoting *Garoogian v. Medlock*, 592 F.2d 997, 1000 (8th Cir.1979)). In making this determination, a decision of the state's intermediate appellate court

> is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. Amer. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940), *quoted in Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). *See also Klippel v. U–Haul Co. of Northeastern Michigan*, 759 F.2d 1176, 1181 (4th Cir.1985) (federal court is free to disregard a decision of a lower state court when it appears to be an aberration). In making this determination, a federal court may also consider restatements of law, law review commentaries, and decisions from other jurisdictions on the "majority" rule. *Grantham and Mann, Inc. v. American Safety Products, Inc.*, 831 F.2d 596, 608 (6th Cir.1987).

The holding in *Bohdan* that there is an exception to the "zone of danger" rule is directly at odds with the Minnesota Supreme Court's refusal, in *Stadler*, to relax the "zone of danger" requirement. The court in *Bohdan* based its finding of an exception on two cases, neither of which address negligent infliction of emotional distress. Further, there is no basis for this exception in the Restatement (Second) of Torts or in the decisional law of other states.

In *State Farm Mutual Auto. Ins. Co. v. Village of Isle*, 265 Minn. 360, 122 N.W.2d 36 (1963), the issue was whether a woman who was not involved in an accident could recover under the Civil Damages Act for mental suffering caused by her husband's injuries. The court held that her mental suffering was not an injury to the person under that statute. *Id.* 122 N.W.2d at 41; *see Okrina v. Midwestern Corp.*, 282 Minn. 400, 165 N.W.2d 259, 262 (1969). The court noted, however, that damages for mental anguish alone, without accompanying physical injury, could be recovered for

> conduct on the part of defendant constituting a direct invasion of the plaintiff's rights such as that constituting slander, libel, malicious prosecution, seduction, or other like willful, wanton, or malicious misconduct.

*Id.*

The court in *State Farm* made it clear that even though this plaintiff was not allowed to recover for her mental distress, there are circumstances where damages for emotional distress are recoverable. In the context of defamation, this observation is consistent with the holding of *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775, 793 (1975), *cert. denied*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976), that a victim of defamation may recover general damages, special damages, and possibly punitive damages.

The court in *Bohdan* also cites *Kamrath v. Suburban Nat'l Bank*, 363 N.W.2d 108, 111 (Minn.Ct.App.1985). In *Kamrath* the court affirmed the award of damages to a plaintiff who suffered primarily emotional distress from the defendant's violation of the Minnesota polygraph statute, Minn. Stat. § 181.75, subd. 1. The court rejected the bank's argument that Kamrath had to prove the elements of intentional infliction of emotional distress in order to recover damages for her mental suffering. The court found that the emotional distress was not an independent tort. "As with the torts enumerated in *State Farm,* harm of the type Kamrath suffered, based in emotional distress, flows naturally from the act constituting the underlying tort." *Id.* at 112.

*Kamrath* does not concern negligent infliction of emotional distress. It holds simply that a plaintiff may recover for mental distress as an element of damages flowing from the conduct at issue.

Finally, the court notes that the trial court in *Bohdan,* following remand from the Minnesota Court of Appeals, instructed the jury that if they found that Bohdan had been defamed, then he would be entitled to damages for, inter alia, mental distress. On appeal after remand, the court of appeals rejected Bohdan's contention that the trial court should have submitted to the jury the question of negligent infliction of emotional distress, concluding that the jury could have awarded damages for negligent infliction of emotional distress had defamation been proven. *Bohdan v. Alltool Mfgr. Co.,* No. C9–88–2024, slip op. at 2 (Minn.Ct.App. Mar. 21, 1989) (1989 WL 23330), *review denied* (May 24, 1989). Had the jury found defamation, they could have awarded damages for the mental anguish caused by the defamation, not for a separate tort. Not only is the *Bohdan* exception unnecessary, but it leaves trial courts without direction on what constitutes negligent infliction of emotional distress.

Three sections of the Restatement (Second) of Torts address negligent infliction of emotional distress. None of these sections, 313, 436, or 436A, mentions the zone of danger exception for intentional torts, either in the text or the comments. Further, the court has searched in vain for decisional law on point from other jurisdictions.

In conclusion, the *Bohdan* exception undermines clear precedent limiting negligent infliction of emotional distress to those within the zone of danger, and the exception is without foundation in the cited cases. In the context of defamation, mental anguish is recoverable as an element of damages under the law of defamation, not as a separate cause of action. Mental suffering is properly compensable as "parasitic" damages. *Prosser and Keeton on Torts* 362–63, 844 (5th ed. 1984). The effect of the *Bohdan* exception is to create a parasitic cause of action which is unnecessary and inappropriate.

Meyer was not within the zone of danger of any physical impact. This is not the fact setting for the tort of negligent infliction of emotional distress. Any damages for Meyer's mental suffering are fully recoverable under defamation.

Accordingly, IT IS ORDERED that the defendants' motion is GRANTED as to Counts III, IV, and V of Meyer's complaint, and DENIED as to Counts I, II, VI, VII, and VIII of the complaint.