**Richard John LUND, Appellant,**

v.

**CHICAGO AND NORTHWESTERN TRANSPORTATION COMPANY, et al., Respondents.**

**No. C4–90–1945.**

Court of Appeals of Minnesota.

March 26, 1991.

Review Denied June 19, 1991.

Debra E. Schmidt, Grannis, Grannis, Hauge, Eide, Anderson & Keller, P.A., Eagan, for appellant.

David A. Donna, Ann K. Grossman, Lindquist & Vennum, Minneapolis, for respondents.

Considered and decided by CRIPPEN, P.J., and PETERSON and MULALLY,[*] JJ.

## OPINION

EDWARD D. MULALLY, Judge.

Richard Lund sued his employer for defamation and infliction of emotional distress. Concluding that the allegedly defamatory statements were constitutionally protected expressions of opinion and that Lund had not established the elements for a claim of emotional distress, the trial court entered summary judgment in favor of the employer. Lund appeals. We affirm.

[*] Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## FACTS

On August 29, 1988, various employees of the Chicago and Northwestern Transportation Company (C & NW) participated in a "brainstorming session" to discuss general problems and concerns. Such meetings were commonly held and were part of the company's effort to promote open communication. Richard Lund, an employee of C & NW and the plaintiff in this action, was not present at the meeting.

A C & NW manager, Ray Peterson, compiled his notes of the meeting into a typed, four-page memorandum. Most of the 85, numbered entries concerned employees' complaints with management's practices and responses to problems. However, line 66 of the memorandum read as follows:

FAVORITISM, DICK LUND, SICK, MOVE–UPS, BROWN NOSE, SHIT HEADS.

The memorandum was posted on the company bulletin board, and additional copies were sent to other company offices. Upon Lund's request, C & NW removed the memorandum. Although unauthorized, copies of the memorandum were reposted, apparently by Lund's coworkers. The company removed those copies as well.

After the initial posting, employees verbally harassed Lund. There were also two instances when some unidentified person placed a foreign substance (analyzed as a pepper derivative) in Lund's coffee. Lund claims to have experienced various emotional and physical problems arising from these incidents. His absences, which Lund contends were due to sickness, almost doubled in 1989 over 1988 or 1987.

Lund sued C & NW, claiming defamation and infliction of emotional distress. On C & NW's motion for summary judgment, the trial court concluded that the challenged portion of the memorandum was protected either under the first amendment, as opinion, or by a qualified privilege. Concluding also that the facts did not support Lund's claims for emotional distress, the court granted C & NW's motion. Lund appeals, arguing that the memorandum is not entitled to constitutional protection and that material issues of fact preclude summary judgment.

## ISSUES

1. Did the trial court err by awarding C & NW summary judgment on Lund's defamation claim?

2. Did the trial court err by awarding C & NW summary judgment on Lund's claims based on infliction of emotional distress?

## ANALYSIS

### I

◼ To be defamatory, a statement must be communicated to someone other than the plaintiff, must be false, and must tend to harm the plaintiff's reputation in the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980). Since the United States Supreme Court decided *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), numerous courts, including the Minnesota Supreme Court, have held that expressions of opinion, even if defamatory, are constitutionally protected. *See Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1302 (8th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986); *Diesen v. Hessburg*, 455 N.W.2d 446, 450–51 (Minn. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991). The federal circuit courts developed a four-factor test to distinguish opinion from fact, which considered 1) the statement's precision and specificity; 2) the statement's verifiability; 3) the social and literary context in which the statement was made; and 4) the statement's public context. *See Janklow*, 788 F.2d at 1302–03.

In *Milkovich v. Lorain Journal Co.*, —— U.S. ——, ——, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990), the Supreme Court recently reviewed the issue of opinion protection. The Court rejected the lower courts' "artificial dichotomy between 'opinion' and fact," holding that not all statements of opinion are constitutionally protected. Recognizing that expressions of opinion may imply assertions of objective facts, the

Court concluded that only opinions relating to matters of public concern that are incapable of being proven true or false, and statements that cannot reasonably be interpreted as stating actual facts, are constitutionally protected. *Id.* at ——, 110 S.Ct. at 2705–07.

In *Hunt v. University of Minnesota*, 465 N.W.2d 88 (Minn.App.1991), this court construed *Milkovich* as narrowing, but not abolishing, the constitutional protection for opinions. The *Hunt* court also emphasized that cases applying the federal courts' four-factor test, although not binding after *Milkovich*, are still helpful for determining whether a statement implies actual facts that can be proven false.

The opinion-fact determination is a question of law. *See Gernander v. Winona State Univ.*, 428 N.W.2d 473, 475 (Minn. App.1988); *see also* Restatement (Second) of Torts § 566 comment c (1977) (the court determines whether an expression of opinion may reasonably be understood to imply the assertion of undisclosed facts). Applying the four-factor test of *Janklow*, the trial court determined that the words contained in line 66 were clearly statements of opinion.

We agree. In *Lee v. Metropolitan Airport Comm'n*, 428 N.W.2d 815 (Minn.App. 1988), coworkers had referred to the plaintiff as a "fluffy," a "bitch," and flirtatious. *Id.* at 821. This court held that such comments regarding Lee's social life and personal characteristics were, as a matter of law, too imprecise in nature to be actionable defamatory statements. *Id.*

██ Whether office gossip or railroad shop vernacular, like the statements in *Lee*, the terms in line 66 lack precision and specificity. Furthermore, in the context of the setting in which they were spoken, this lack of precision and specificity blunts any connotation of conduct sufficiently repre-

hensible to constitute defamation, whether measured by constitutional or common law standards. As the trial court recognized, two of the terms, "move-ups" and "shit heads," are plural and do not necessarily apply to Lund exclusively. Moreover, the underlying facts to be inferred from these terms are unclear. Although uncomplimentary, "shit heads" does not suggest verifiably false facts about Lund.

The terms "favoritism" and "brown nose" require a similar conclusion. They are not themselves factual assertions, and it is unclear what, if any, underlying facts they imply. Even if the terms are viewed as hybrid statements of opinion and fact, we conclude that the ambiguous implications of the words prevent them from being proven true or false. *See Hunt*, 465 N.W.2d at 94–95. We hold that the statements were constitutionally protected expressions of opinion and, therefore, not actionable.[1]

C & NW also claims that the statements in the memorandum are conditionally privileged. *See, e.g., Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 379–80 (Minn.1990). Because we decide that C & NW's statements are constitutionally protected, we need not address whether they are also entitled to a qualified privilege.

### II

Lund claims that C & NW intentionally and negligently inflicted emotional distress by allowing repeated postings of the memorandum, verbal harassment by coworkers, and repeated instances of adulteration of his coffee. With the essential facts undisputed, the trial court ruled that C & NW was entitled to summary judgment on these claims as a matter of law.

██ To recover for negligent infliction of emotional distress, Lund must show that

---

1. We find unpersuasive the dissent's limitation of constitutional opinion protection to statements about public officials or public figures, or regarding matters of public concern. A state's substantial interest in providing remedies for defamation per se can outweigh the admittedly less weighty, constitutional concerns in a "private" case. *See Dun & Bradstreet, Inc. v. Green-* *moss Builders, Inc.,* 472 U.S. 749, 760–61, 105 S.Ct. 2939, 2946, 86 L.Ed.2d 593 (1985) (plurality opinion). However, when the statements, such as those made here during a meeting regarding employee grievances, are clearly opinions, the state's interest fades and the first amendment predominates.

C & NW placed him within a zone of danger of physical impact, prompting reasonable safety concerns and causing severe emotional distress and resultant physical injury. *See Stadler v. Cross,* 295 N.W.2d 552, 553–54 (Minn.1980); *Lee,* 428 N.W.2d 815, 823. Although an exception to this rule allows recovery for mental anguish or suffering caused by a direct invasion of the plaintiff's rights, such as defamation, *see Lee,* 428 N.W.2d at 823–24, because we affirm the summary judgment on Lund's defamation claim, he must satisfy the "zone of danger" test to recover damages for emotional distress.

Lund asserts that C & NW failed to prevent the second instance of adulteration which caused him mental anguish. Given the minimal danger actually posed, however, the trial court correctly concluded that Lund could not have reasonably feared for his safety. We affirm the grant of summary judgment on this claim.

■■■ To establish a claim for intentional infliction of emotional distress, Lund must show that (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe. *Hubbard v. United Press Int'l,* 330 N.W.2d 428, 438–39 (Minn. 1983). The supreme court in *Hubbard* emphasized that the conduct must be " 'so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community,' " and that a "similarly heavy burden" falls on the plaintiff's allegations of mental distress. *Id.* at 439 (quoting *Haagenson v. National Farmers Union Property & Casualty Co.,* 277 N.W.2d 648, 652–53 n. 3 (Minn.1979)).

Lund's claim does not reach the requisite level of severity. Line 66, although vulgar, is not especially shocking or egregious. On these facts, summary judgment was appropriate.

**1.** The Court held that no constitutional interest limits state tort law recovery of presumed and punitive damages in a defamation action involv-

## DECISION

C & NW'S statements of opinion are entitled to constitutional protection and are not actionable. Because Lund's claims for emotional distress cannot stand by themselves, we affirm C & NW's award of summary judgment.

Affirmed.

CRIPPEN, Judge (dissenting).

I. Private Issue, Private Claimants

A. *Limited Scope of First Amendment Decisions.*

Opinions, the trial court concluded, are "absolutely protected" under the first amendment and are not actionable. We ought not sustain this mistaken statement.

The United States Supreme Court never has held that purely private communications—those involving private plaintiffs and private issues—are subject to the same constitutional protections as communications involving public claimants or public issues. To the contrary, its decisions extending first amendment law to defamation cases consistently have been in the context of public comments or public parties. Moreover, since 1985 the Court has affirmatively indicated that in the absence of such a public context, a defamation action is not constitutionally significant, but rather is governed by state common law.

In *Dun & Bradstreet, Inc. v. Greenmoss Builders,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), a plurality of the Court stated that speech on purely private matters is of less first amendment concern, and therefore, the state's interest in protecting individual reputations is not necessarily overcome by constitutional considerations.[1] *Id.* at 759–60, 105 S.Ct. at 2945–46. Whether speech addresses a matter of public concern is to be determined by the content, form and context of the expression as revealed by the whole record. *Id.* at 761, 105 S.Ct. at 2946. In *Dun & Bradstreet,* a confidential credit report sent to only five subscribers was held to be purely private speech. *Id.* at 762, 105 S.Ct. at 2947.

ing a private plaintiff, a non-media defendant, and an issue of private concern. *Dun & Bradstreet,* 472 U.S. at 763, 105 S.Ct. at 2947.

The Court clarified the *Dun & Bradstreet* plurality opinion a year later in *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). One can discern, the Court observed, two forces that may "reshape the common-law landscape to conform to the First Amendment."

The first is whether the plaintiff is a public official or figure, or is instead a private figure. The second is whether the speech at issue is of public concern. * * * When the speech is of exclusively private concern and the plaintiff is a private figure, as in *Dun & Bradstreet*, the constitutional requirements do not necessarily force any change in at least some of the features of the common-law landscape.

*Id.* at 775, 106 S.Ct. at 1563.[2]

The internal business communication at issue in this appeal is of purely private concern. The plaintiff is a private figure. Thus, we should determine the dispute according to state common law principles rather than constitutional law. *See Roffman v. Trump*, 754 F.Supp. 411, 415 (E.D. Pa.1990) (holding that state common law determines whether an assertion of opinion is actionable in a private dispute).

### B. *Minnesota Common Law*

Generally, the common law considers actionable many statements of opinion. An expression is defamatory if the statement is "sufficiently derogatory of another as to cause harm to his reputation." Restatement (Second) of Torts § 566, comment a (describing common law of actionable opinion in defamation). This is true "despite

the normal requirement that the communication be false as well as defamatory." *Id.*

This description is corroborated by the First Restatement. The First Restatement lists three categories in a section entitled "types of defamatory communication": (1) statements of fact; (2) expressions of opinion upon known or assumed facts; and (3) expressions of opinion upon undisclosed facts. Restatement of Torts §§ 565–567. Thus, under the First Restatement:

[A] defamatory communication may be made by derogatory adjectives or epithets as well as by statements of fact. Thus, it is defamatory to add to an accurate statement of another's innocent conduct, an adjective or epithet which characterizes it as reprehensible.

*Id.* § 566, comment a.

Defamation may consist of "words which, while couched in the form of epithets or adjectives, carry an implied accusation that the other has been guilty of some specific type of reprehensible conduct." *Id.* § 567, comment a. In addition, common law defamation can occur when one utters what the First Restatement labels "harsh judgments on undisclosed facts." *Id.* § 567, comment b. Such statements "leave it open to doubt as to whether they are intended to imply conduct, the direct accusation of which would be defamatory, or whether they are intended to express a harsh judgment on conduct, the direct accusation of which would not necessarily be defamatory." *Id.* For all these statements of opinion, including "harsh judgments," the Restatement requires the defendant to prove that the "harsh judgment" is either true or privileged as fair comment under section 606.[3] *Id.; see id.* § 606.

---

2. The Court held in *Hepps*, a case involving a private plaintiff, a media defendant and an issue of public concern, that the common law rule placing the burden of proving truth on the defendant must fall to a constitutional rule requiring the plaintiff to prove falsity. *Id.* at 776, 106 S.Ct. at 1563.

3. The Restatement suggests that calling another a hypocrite, without stating any conduct on which one bases this opinion, would be actionable unless privileged as fair comment. Restatement of Torts § 567, comment b (illustration). Thus, common law support is even lack-

ing for the "rhetorical hyperbole" doctrine, outlined by the Court in *Milkovich v. Lorain Journal Co.*, ⸺ U.S. ⸺, ⸺, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990). In cases appropriately governed by constitutional law principles, the Supreme Court has found statements not actionable in defamation if in categories of "rhetorical hyperbole" or "imaginative expression," statements that cannot reasonably be interpreted as stating actual facts about a person. *Id.* at ⸺, 110 S.Ct. at 2704–06; *see National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284–86, 94 S.Ct. 2770, 2781–82, 41 L.Ed.2d 745 (1974) (use of the

It is the First Restatement, not the Second, which offers primary guidance in deciding this case. The Second Restatement expressly employs constitutional principles about defamation actions and applies them to all defamation cases. Restatement (Second) of Torts § 566, comment c. The Second Restatement authors contrast section 566 with common law principles. *Id.*, comment a. Predating both *Dun & Bradstreet* and *Hepps*, it is evident the Second Restatement did not anticipate the significance of regard for the public or private nature of the parties or the communication. Minnesota has not employed section 566 of the Second Restatement to deal with purely private communications.[4]

Applying common law principles just outlined, the "opinion" at issue here is actionable. The epithets published by respondent characterize appellant's conduct as reprehensible, and as an employment problem requiring correction. Moreover, the labels imply that appellant has sought and obtained favors inappropriately, so much so in fact to make him an obnoxious employee. These statements place upon respondent the burden to prove truth or privilege.

## II. The Alternative First Amendment Rationale.

The majority relies on *Milkovich v. Lorain Journal Co.*, —— U.S. ——, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), in holding that the statements here are not actionable. Accordingly, the majority states that under *Milkovich*, "only opinions relating to matters of public concern that are incapable of being proven true or false, and statements that cannot reasonably be interpreted as stating actual facts, are constitutionally privileged." However, even under this version of the law, the statements at issue in this appeal are actionable defamation. Initially, to reiterate a point already made here, the statement does not relate to "matters of public concern." The majority also determines, however, that the publication "cannot reasonably be interpreted as stating actual facts."

The *Milkovich* Court declined to "create a wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich*, —— U.S. at ——, 110 S.Ct. at 2705. Rather, the court approved the view that protected opinions are those unique because they can be corrected by discussion. *Id.* (citing *Cianci v. New Times Publishing Co.*, 639 F.2d 54, 62, n. 10 (2d Cir.1980)).

Adding one more particular observation, the *Milkovich* court stated that actionable opinions include those implying assertion of more objective facts. *Id.; see* Restatement (Second) of Torts § 566, comment c, illus. 4. The Court observed that the statement "[i]n my opinion John Jones is a liar" may be actionable in defamation. *Id.* at ——, 110 S.Ct. at at 2705–06. The Court added: "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Id.* at ——, 110 S.Ct. at 2706.

Since *Milkovich*, this court has determined that the four-factor constitutional test for distinguishing fact from opinion still has some utility as an analytical tool.[5] *Hunt v. University of Minnesota*, 465 N.W.2d 88, 94 (Minn.App.1991) (holding statement that an individual "lacks integri-

---

word "traitor" in literary definition of a union "scab" not basis for defamation action because used as mere rhetorical hyperbole, in loose figurative sense as imaginative expression); *Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 13–14, 90 S.Ct. 1537, 1541–42, 26 L.Ed.2d 6 (1970) (use of the word "blackmail" to describe a negotiating position not basis for defamation action because used as rhetorical hyperbole and a "vigorous epithet").

4. In *Roffman,* the Pennsylvania federal district court, applying Pennsylvania common law, recognized prior Pennsylvania court adoption of

section 566 as a common law concept. *Roffman,* 754 F.Supp. at 419. Thus, the court had no occasion to identify the employment of constitutional principles in shaping the content of the restatement section.

5. The four-factor test suggests courts look at (1) the specificity and precision of the statement; (2) its verifiability; (3) the social and literary context in which the statement was made; and (4) the public context in which the statement was made. *Janklow v. Newsweek, Inc.,* 788 F.2d 1300, 1302–03 (8th Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986).

ty" not actionable in defamation), *pet. for rev. dismissed* (Minn. Mar. 4, 1991)). In *Hunt,* where the plaintiff was seeking a political appointment as a county lobbyist, the court found the public context of the statement important. *Id.* at 93–94; *see Capan v. Daugherty,* 402 N.W.2d 561, 564 (Minn.App.1987) (pre-*Milkovich* case holding not actionable, applying four-factor test, statement that community block club organizer was "not dealing with a full deck," based on public context of debate over neighborhood organizations).

In another case using the four-factor test, this court found not actionable statements by co-workers that another employee was "fluffy," a "bitch" and "flirtatious." *Lee v. Metropolitan Airport Comm'n,* 428 N.W.2d 815, 821 (Minn.App. 1988) (pre-*Milkovich* decision). The court found important the context of these statements as "office gossip and banter." *Id.*

In light of *Milkovich* and *Hunt,* the statements at issue on this appeal imply facts verifiable by appellant's alleged improper and offensive efforts to influence superiors and gain favoritism in promotion.

In addition, we should recognize the context of the statements made about appellant. The document was entitled "WHAT ARE SOME PROBLEMS/OPPORTUNITIES WE NEED TO ADDRESS." Line 66 specifically identified appellant by name as one such problem. Appellant's name was modified by "favoritism," "brown nose," and "shitheads."

An illustration in the Second Restatement is parallel:

> A writes to B about his neighbor C: "I think he must be an alcoholic." A jury might find that this was not just an expression of opinion but that it implied that A knew undisclosed facts that would justify this opinion.

Restatement (Second) of Torts § 566, comment c, illus. 3. Similarly, stating that "Dick Lund is a problem in the workplace" implies that the speaker is aware of facts to support this statement.

Other factors about the circumstances surrounding this communication make it actionable. The employer had the material typed and then posted. It was not merely an offhand oral remark. The posting evidently continued for several weeks, even for some time after appellant reported being upset and after a manager admitted making a mistake in publishing the material. Any printing of vituperative remarks tends to make an otherwise unactionable oral statement actionable. Restatement (Second) of Torts § 566, comment e. Furthermore, one epithet here ("shitheads") which might be unactionable "rhetorical hyperbole" by itself, takes on actionable characteristics when used in conjunction with other defamatory words or statements. *See National Recruiters, Inc. v. Cashman,* 323 N.W.2d 736, 742 (Minn.1982) (epithet part of defamation where it accompanies defamatory disparagement of plaintiff's suitability for employment).

Finally, the context of the statement at issue here is distinguishable from the circumstances of *Hunt* and *Lee.* Unlike *Hunt,* the public context factor of the four-factor test does not come into play. In addition, the words "brown nose," "favoritism," and "move-ups," unlike the charge in *Hunt* which related to a person's level of integrity, imply wrongful efforts to gain employment favors. Appellant is prepared to testify this accusation is false. *Cf. Diesen v. Hessburg,* 455 N.W.2d 446, 455 (Minn. 1990) (Simonett, J., concurring specially) (claim of defamatory accusation fails where underlying facts are undisputed and true), *cert. denied,* —— U.S. ——, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (U.S.1991).

Unlike *Lee,* the statement was not merely office gossip. Although it is contended the statement is merely a report of what appellant's co-employees have said, the communication lost its character as a record of employee statements when the employer republished it as a report of problems requiring attention. The employer posted it in the workplace and sent it to other offices. The context is such that the employer is sanctioning the statement "Dick Lund is a problem in the workplace," and the ephitets described that problem. As such, it can reasonably be understood to imply undisclosed facts about appellant's

work performance. The statement is actionable in defamation.

### III. The Privilege Hypothesis

The trial court stated alternatively that even if the statement was actionable, a conditional privilege for comment as part of legitimate business operations applied to this communication, and this privilege was not overcome by evidence of common law malice. The trial court found "no evidence that the company abused the conditional privilege in any respect."

In order to overcome a conditional common law privilege to make defamatory statements, the plaintiff must prove that the defendant "made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 257 (Minn.1980) (quoting *McKenzie v. William J. Burns Int'l Detective Agency,* 149 Minn. 311, 312, 183 N.W. 516, 517 (1921)). Such malice is shown by " 'extrinsic evidence of personal ill feeling, or by intrinsic evidence such as the exaggerated language of the libel, the character of the language used, the mode and extent of publication, and other matters in excess of the privilege.' " *Frankson v. Design Space Int'l,* 394 N.W.2d 140, 144 (Minn.1986) (quoting *Friedell v. Blakely Printing Co.,* 163 Minn. 226, 231, 203 N.W. 974, 976 (1925)).

Whether a conditional privilege has been abused is usually a question of fact for the jury, *Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 890 (Minn.1986) (citing Restatement (Second) of Torts § 619), unless the facts are such that only one conclusion can be drawn. *See Harvet v. Unity Medical Center Inc.,* 428 N.W.2d 574, 579 (Minn.App.1988).

Under this test, there was ample evidence in the record making abuse of the privilege a jury question. Intrinsic evidence alone could permit a jury to find the privilege has been abused. The language used was exaggerated and profane. The communication was in printed form. The communication was published by posting it in appellant's office and was sent to other offices where appellant does not work. Posting continued even after wrongdoing and harm were evident to respondent. These facts suggest that the privilege was not used properly to open channels of communication between employer and employees, but rather permitted to humiliate appellant. Under these facts, the case should be remanded to the trial court for a jury determination whether respondent abused its privilege.

I respectfully dissent.